OPINION
{¶ 1} Defendant-appellant James Sloan, Jr. appeals the decision of the Belmont County Court, Northern Division, finding him guilty of R.C.2903.21, Aggravated Menacing, and R.C. 2917.11(A)(5), Disorderly Conduct. Sloan makes two arguments in this appeal. First, he argues that the trial court was not a fair and impartial tribunal. Second, he argues that the convictions are against the manifest weight of the evidence. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS AND CASE {¶ 2} On May 10, 2004 between 7:00 and 7:30 a.m., a verbal altercation occurred between James Sloan and Andrew and Elizabeth Jakubic (the parties live in the same neighborhood). As a result of this altercation, Andrew and Elizabeth both filed criminal complaints against Sloan. Each complaint contained one count of menacing and one count of disorderly conduct. At the bench trial, each side presented a different version of events. However, the one point that the parties agreed upon was that the Jakubics and Sloan do not like each other and have had past problems with each other.
 {¶ 3} According to the Jakubics, the altercation was one-sided and consisted of Sloan yelling at them and almost hitting them with his car. The Jakubics testified that the altercation began when Sloan drove his car at a high rate of speed down the alley where the Jakubics' house is located. (Tr. 12, 39). The Jakubics contended that Sloan drove his car approximately a foot away from them (almost hitting them) and then stopped within inches of their property. (Tr. 13, 35, 40-41). They then testified that Sloan got out of the car and was yelling and screaming at them; they described his demeanor as very violent, enraged and hostile. (Tr. 14, 40, 43). Sloan was yelling that he was "going to end it all," and that he was going to run them down. (Tr. 14, 16, 42-43). According, to the Jakubics, Sloan then got back into his car, moved it a couple of feet, then got back out of the car and continued to yell at them. (Tr. 17, 45). Sloan then returned to his car and left. The Jakubics stated that they did not know what triggered Sloan's actions and outburst. Andrew testified that while all this was occurring he was afraid for his safety and he believed Sloan would cause serious physical harm to him. (Tr. 41, 43, 44). However, the Jakubics also testified that Sloan did not enter their property, nor did he physically touch them.
 {¶ 4} A neighbor, Tamara Regal, who witnessed part of the altercation, testified that Sloan was yelling at Andrew. (Tr. 57). She stated that she did not hear the Jakubics say anything to Sloan. (Tr. 59). She stated that Sloan was saying, "come on, old man, me and you, right here, right now." (Tr. 57). She testified that to her it looked like Sloan was going to swing at Andrew. (Tr. 57).
 {¶ 5} Sloan's version of the events differed from that of the Jakubics. He contended that he was driving safely, at a rate of 15 or 20 mph, down the alley where the Jakubics' house is located. Sloan testified that he heard Andrew say he almost hit them with his car and that they should call the police. (Tr. 82). Sloan stated that the comment upset him, so he stopped his car and told the Jakubics that they were crazy. (Tr. 83). He contended that his car was seven to eight feet away from the Jakubics and that when he was driving down the alley he did not even come close to hitting them. (Tr. 81). He acknowledged that he did get out of his car to talk to the Jakubics, but he stated that the verbal altercation was mutual. (Tr. 88). He testified that Andrew Jakubic was taunting him, calling him names, and making rude comments about his father, mother and girlfriend. (Tr. 84-85, 89).
 {¶ 6} After hearing all the evidence, the trial court found Sloan guilty of menacing and disorderly conduct against Andrew.[1] Sloan was then sentenced to thirty days in jail, all suspended except for four days which were to be served as community service. Sloan was fined $200 plus court costs on the menacing conviction and $50 plus court costs on the disorderly conduct conviction. Sloan timely appeals raising two assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} "The trial court did not afford defendant-appellant with a fair and impartial trial of the issues."
 {¶ 8} Sloan contends that the trial court was not a fair and impartial tribunal during his trial. He makes two arguments in support of this contention. First, he claims that the record is "replete with the court's participation in the prosecution of the case as the principal interrogator of the State's witnesses." He cites to various portions of the record where the trial court asked questions of the witnesses. Second, he contends that the trial court's own statements show it was impartial. He cites the following comments as evidence of the court's impartiality:
 {¶ 9} "The Court: Mr. Thomas [prosecutor] and Mr. Costine [Sloan's counsel], if you want to take a couple minutes and talk, to see if this matter can be resolved, since someone is taking a hard fall in a few minutes." (Tr. 3).
 {¶ 10} "The Court: — but that's got to do with the proof of May 10th, not — even if what you're saying is that there were false charges filed against him, he still did not have the right to do what he allegedly did on May 10th." (Tr. 29).
 {¶ 11} Each argument is addressed separately.
 COURT'S QUESTIONING WITNESSES {¶ 12} At trial, six witnesses testified. During the majority of the witnesses' testimony, the trial court asked minimal questions. However, during Elizabeth's testimony the trial court did ask many questions, in fact the 12 pages of direct examination looks more like it is a conversation between the trial court and Elizabeth. (Tr. 8-20). Furthermore, during Andrew's testimony, the trial court asked two questions. The first was whether he believed Sloan would cause him serious physical harm, in which he responded that he did. (Tr. 44). This question had not been asked by the prosecutor and directly relates to the elements of the offense. The second question was whether that belief prompted anything else on his part, in which Andrew responded that it did not. (Tr. 44).
 {¶ 13} Evid.R. 614(B) allows a trial court to question witnesses, and states "[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." "The right to question witnesses pursuant to Evid.R. 614(B) rests within the sound discretion of the trial court." State v. Williams (Dec. 24, 1998), 11th Dist. No. 97-T-0148, citing State v. Prokos (1993), 91 Ohio App.3d 39, 44.
 {¶ 14} Impartial questions that attempt to clarify the testimony and are directed to relevant factual issues do not display an abuse of discretion. State v. Daugherty, 11th Dist. No. 2001-T-0024, 2002-Ohio-1183. However, a trial court's questioning must be scrupulously limited, lest the court, consciously or not, indicates its opinion on the evidence or on the credibility of a witness. State ex rel. Wise v. Chand (1970),21 Ohio St.2d 113, paragraph three of the syllabus. But when the court questions witnesses during a bench trial it is "accorded greater flexibility in questioning witnesses * * * [because] when there is no jury, there is no one to be prejudicially influenced by the judge's demeanor." Id. citing City of Mentor v. Brancatelli (Dec. 5, 1997), 11th Dist. No. 97-L-011.
 {¶ 15} A complete reading of the questions asked by the trial court of Elizabeth indicates that the court was attempting to understand her testimony. Elizabeth was the first witness and, as such, she offered logistical testimony such as the location of her house, where she and Andrew were walking, and which direction Sloan was driving. Thus, while the court may have asked an inordinate amount of questions, the questioning provided it with an understanding of the case and did not rise to the level of an abuse of discretion.
 {¶ 16} As for the questions the trial court asked Andrew, these questions were directed to a relevant factor of the offenses. A trial court's question of a witness is not to be deemed partial "merely because the evidence elicited during the questioning is potentially damaging to the defendant." State v. Hamilton, 11th Dist. No. 2000-L-003, 2002-Ohio-1681, quoting Brancatelli, 11th Dist. No. 97-L-011. Accordingly, while this line of questioning may have proven some elements of the offense, it did not rise to an abuse of discretion.
 {¶ 17} Furthermore, this was a bench trial. As stated above, in a bench trial, the court is afforded greater flexibility in questioning a witness because there is no jury to be prejudicially influenced by the implication of the court's question to the witness. Consequently, for that reason and those expressed above, a review of the entire record reveals that the trial court did not abuse its discretion by questioning the witnesses in the manner it did.
 TRIAL COURT'S COMMENTS {¶ 18} It is well established that a trial judge must at all times remain impartial and refrain from comments which might influence the jury. State v. Boyd (1989), 63 Ohio App.3d 790, 794, paragraph three of the syllabus. However, the comments complained of in this case do not display that the court was biased.
 {¶ 19} The first comment Sloan directs this court to is the statement made by the court prior to trial where the court asks the parties to resolve this matter without having a trial. In this statement, the court indicates that, "someone is taking a hard fall in a few minutes." (Tr. 3).
 {¶ 20} While this statement is probably improper, it cannot be read alone and instead must be taken in conjunction with the entire record of the trial. It appears that when the trial court was making this statement, it was trying to show the parties that they were acting like children instead of acting like adults. For example, later in the trial, the court states the following:
 {¶ 21} "The Court: Well, there's got to be a lot of growing up on both sides of this case. A lot of growing up." (Tr. 95).
 {¶ 22} "The Court: Two children with potential serious consequences is the way I view it, Mr. Costine. That's how I viewed Mr. Jakubic and Mr. Sloan. I just want you to know that." (Tr. 104 — sentencing).
 {¶ 23} Thus, while the statement about somebody taking a fall should not have been made, when viewed in light of the entire record, the trial court did not exhibit bias or ill-will towards Sloan. See Williams v.Waller (Dec. 26, 1996), 8th Dist. No. 69069. Rather, the court was commenting on the childlike relationship between the parties and that they should resolve their problems like adults.
 {¶ 24} As to the second comment, "— even if what you're saying is that there were false charges filed against him, he still did not have the right to do what he allegedly did on May 10th," like the above statement, it does not show bias or prejudice against Sloan. (Tr. 29).
 {¶ 25} The trial court's statement is factually and legally correct. Sloan was trying to show that prior to the alleged occurrence on May 10th, the Jakubics called the police and tried to have criminal charges (which Sloan contends were false) filed against him based on another alleged occurrence that happened between the parties. The court's statement that even if those charges were false, it did not justify the alleged action he took on May 10th is correct. The trial court was instructing Sloan that the false charges were not a defense to his actions.
 {¶ 26} Furthermore, the trial court used the word allegedly to describe Sloan's conduct on May 10th. The word allegedly means that those actions have not yet been proven; they are just allegations. Thus, the statement does not show that the trial court was biased or partial, rather, it shows impartiality. Accordingly, this argument fails and this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 27} "The verdict of the trial court was contrary to the manifest weight of the evidence."
 {¶ 28} When reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts, 92 Ohio St.3d 146, 163,2001-Ohio-132, quoting State v. Getsy, 84 Ohio St.3d 180, 193,1998-Ohio-533. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 29} The trial court found Sloan guilty of R.C. 2903.21, aggravated menacing, and R.C. 2917.11(A)(5), disorderly conduct. To be found guilty of menacing the evidence must have shown that Sloan knowingly caused Andrew to believe that he would cause serious physical harm to Andrew. R.C. 2903.22(A). To be found guilty of disorderly conduct the evidence produced at trial must have shown that Sloan recklessly caused annoyance or alarm to Andrew when he created a condition that presented a risk of physical harm to Andrew by any act that serves no lawful or reasonable purpose. R.C. 2917.11(A)(5).
 {¶ 30} As aforementioned, the Jakubics testified that Sloan's car stopped approximately a foot from them, and in their opinion looked as if Sloan was going to hit them with his car. The Jakubics and their neighbor, Tamara Regal, testified that Sloan was yelling profanities at Andrew. Regal further testified that it looked to her like Sloan was going to swing at Andrew. She stated that she did not hear the Jakubics say anything to Sloan. During the altercation, when Sloan was out of the car he was an arm and a half away from Andrew. (Tr. 42). Andrew testified that during the altercation, he was afraid for his safety and he believed that Sloan would cause him serious physical harm. (Tr. 41, 44).
 {¶ 31} All of this testimony, if believed, supports the verdict. Sloan's action of driving his car toward the Jakubics, stopping approximately a foot away from them, and getting out of the car and yelling at them shows that he was acting both recklessly and knowingly. These actions could lead a person to believe that physical harm would occur to them. Furthermore, nothing presented showed a reasonable purpose for Sloan's actions.
 {¶ 32} Yet, we do acknowledge that Sloan presented a different version of events. He stated that his car never came close to the Jakubics and that Andrew was taunting him trying to make him fight by insulting him, his father, his mother and his girlfriend. According to Sloan, it was a mutual verbal onslaught. (Tr. 88). Thus, according to him Andrew's insulting him suggests that Andrew was not in fear of his safety. If his testimony was believed, then the verdict could not stand.
 {¶ 33} Thus, it is a credibility question. We must find that despite the two conflicting versions of events, the verdict was not against the manifest weight of the evidence. Credibility of the witnesses is best left to the trier of fact (which in this case was the trial court) as it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. An appellate court will not substitute its judgment for that of the trier of fact if there is competent and credible evidence to support the conviction. State v. Trembly (2000), 137 Ohio App.3d 134,141-142. Accordingly, this argument lacks merit.
 {¶ 34} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.
[1] The charges as to Elizabeth were dismissed due to a speedy trial violation.